*No. 972.

STATE OF LOUISIANA EX REL. ATTORNEY-GENERAL VS. E. P. RARESHIDE
ET AL. AND W. E. CLARKE.

No. 973.

STATE OF LOUISIANA EX REL. ATTORNEY-GENERAL AND WILLIAM MARTIN
VS. VINCENT LAMANTIA.

No. 974.

STATE OF LOUISIANA EX REL. ATTORNEY-GENERAL VS. J. F. SHAW ET. AL.

Public officers appointed by the late Governor shall hold their offices, under the provisions of
the present Constitution, until their successors are duly appointed and qualified.
Appointments of public officers by the Governor, which are by law subject to the advice and
assent of the Senate, are inoperative, if made after adjournment of the Legislature, unless
to fill up such vacancies as are caused by death, resignation, or removal.
Held, therefore, that the Relators have not been duly appointed and qualified, and that the
Defendants are entitled to continue in the discharge of their respective offices.

APPEALS from the Fourth District Court for the parish of Orleans,
Houston, J.; and from the Fifth District Court for the parish of Or-
leans, Rogers, J.

E. Howard McCaleb for the Relators.

Joseph P. Hornor and Francis W. Baker on the same side.

Kelly & Lazarus on the same side:

By the 6th section of Act 87 of 1876, the Governor is authorized to ap-
point the members of the Board of Flour Inspectors of the City
and Port of New Orleans, without requiring the advice and consent
of the Senate.

That section of the act is not void for repugnancy to article 114 of the
Constitution of 1868, which required that every law should express
its object or objects in its title. The title of the act affords a reason-
able clue to the subject matter of the section, which is germane to
the subjects referred to in the title of the act.

The Court will not declare an act of the Legislature void, unless its re-
pugnancy to the Constitution is clear beyond all reasonable doubt.

Under the Constitution of 1868, the defendants held their offices for a
term of four years, from January, 1877, but when that Constitution
was superseded by the Constitution of 1879, they ceased to hold the
offices for. any term of years, but continued to hold office by virtue

* These cases, by agreement of Counsel, were together argued at Monroe, taken under
advisement and decided at Opelousas.
     The judgment of the Fourth District Court was in favor of the Relators, and that of the
Fifth District Court in favor of the Defendants.—NOTE OF THE REPORTER.

State of Louisiana ex rel. Attorney-General vs. Rareshide et al.

of articles 259 and 260 of the schedule of the Constitution of 1879, at the will of the Governor to be elected under that Constitution.

When an office is not held for a term of years or during good behavior, it is held at the will of the appointing power, and the incumbent may be removed at any time.

Spencer & White for the Defendants :

First—The defendants having been regularly commissioned and qualified under the Constitution of 1868, hold over until their successors are duly nominated by the Governor and appointed by and with the advice and consent of the Senate. Constitution, articles 161, 259.

Second—The plaintiffs are not to be considered as appointed until their nomination by the Governor is confirmed by the Senate. Baumbach vs. Dubuc, 9 An. 237.

Third—Where an office is filled during the recess of the Senate by an incumbent holding over in consequence of an expiration of term which took place before the meeting of the General Assembly, the office is not vacant, and the Governor cannot create a vacancy by a recess appointment.

Fourth—These propositions are settled by the case of Baumbach vs. Dubuc, 9 An. 237, which case is, under the principles announced by your Honors in Wilson vs. Wiltz, to be adhered to under the rule of *stare decisis.*

Fifth—The pleadings and proof do not justify the charge that the defendants were removed for cause by the Executive.

Sixth—If they do, the power to remove is no longer an executive, but a judicial, function. Constitution, articles 196 to 201 inclusive.

Seventh—There is no conflict between section 1 of Act No. 71, extra session of 1870, and the 6th section of Act No. 87 of 1876 ; they are laws *in pari materiœ,* and must be construed together.

Eighth—If there be a conflict, the 6th section of the act of 1876 is unconstitutional, its object not being expressed in the title of the act. Constitution of 1868, article 114 ; Walker vs. Caldwell, 4 A. 298.

Ninth—Applying for an appointment does not estop the defendants.

---

The opinion of the Court was delivered by

TODD, J. The defendants were appointed and commissioned by the late Governor, by and with the advice and consent of the Senate, respectively, as harbor-masters, hay inspectors, inspectors of weights and measures, and flour inspectors of the parish of Orleans, to fill during the term specified by law these offices, which they claim the right of holding until their successors are duly appointed and qualified.

Before the expiration of their terms of office as fixed by law, the present Constitution was adopted. The first Legislature organized under this Constitution has met and adjourned. Since the adoption of the Constitution and during the session of the Legislature that has intervened since, and since its adjournment, the defendants have continued to discharge the functions of their respective offices up to the institution of these suits.

Since the adjournment of the Legislature the present Governor of the State appointed and commissioned the relators to fill the same offices ; but as the Senate was not in session at the date of their appointment there was no confirmation by that body previous to the issuing of the commissions to the appointees.

There is no pretense that any one of those appointed by the late Governor, defendants herein, has resigned or been removed by the present Executive, who has the power to remove for cause. R. S. 3913, 1859, 1866, 1679 ; article 71 of 1870.

The proceedings were instituted by the relators, the last appointees, under the Intrusion-into-Office Act, against the defendants ; and the issue presented is whether they are entitled to be inducted into the respective offices now held and the duties of which are being discharged by the defendants.

Article 161 of the present Constitution provides : "All officers shall continue to discharge the duties of their offices until their successors shall have been inducted into office." See, also, art. 259.

The question arises whether the relators are the successors of the defendants, duly appointed and qualified, or, in other words, whether their appointment is constitutionally valid ?

Had the defendants or any of them died, or resigned, or been removed, and the commissions of the last appointees, the relators, expressly declared the vacancies arising from such cause or causes, and the filling of the same, we would have been powerless to go behind the appointments and pass upon the propriety or legality of the action of the Executive, 12 A. 719, 17 A. 161, 25 A. 396 ; but, as this feature is wanting, we will proceed to examine the issue presented.

The adoption of the Constitution of 1879 of itself vacated all offices held under the previous Constitution and the laws in force under it, although the terms of these offices had not expired. 8 A. 401 ; Wilson vs. Wiltz, ante, page 688.

The Governor had the right to fill, in the manner pointed out by law, the vacancies thus occasioned, but as the defendants were in the actual discharge of their functions, holding over under constitutional authority until their successors were appointed and qualified, the power.

of appointment could only be exercised by and with the advice and consent of the Senate.

Vacancies are either original,. constructive, or accidental, or absolute. They can only be filled when the power to do so is expressly conferred by the authority upon which this power is conferred, and in the mode provided by the Constitution or laws. A vacancy is original when an office is created and no one has been appointed to fill it. It is constructive when the incumbent has no legal right or claim to continue in office, but can be legally replaced by another functionary.

It is accidental or absolute when, the incumbent having died, resigned, or been removed, there is no one *in esse* discharging the duties of the office.

Executive appointments are authorized to be made by the Governor *alone*, or by him with the concurrence of the Senate. Where the appointment is subject to the action of the Senate, if the vacancy is accidental and occurs previous to or during. the recess of the Senate, and the concurrence of that body has not been had, the appointment is temporary and contingent upon confirmation. In the event it has not been confirmed, either because the name was not sent in or was rejected, the appointment becomes inoperative from the moment of adjournment or from the moment of its rejection, as the case may be.

Under the provisions of the laws creating the offices in question, the Executive is clothed with the power of appointment for the term designated, but can exercise it only with the advice and consent of the Senate when that body is in session at the time the vacancy occurs.

It is true that a distinction is sought to be made in this respect with regard to the appointment of flour inspectors, the counsel contending that by the provisions of act 87 of 1876, the Governor has the authority to make this appointment without the concurrence of the Senate. We see no inconsistency between the act referred to and the previous act 71 of the extra session of 1870, which expressly provides that such appointments should be made by and with the advice and consent of the Senate. This act was not repealed by the subsequent act referred to. They both exist, are not inharmonious, and must be construed together. And this construction places all these officers upon the same footing, and we will treat them alike.

The vacancies in the cases before the Court were not original or absolute in character. They were constructive vacancies. They became so previous to the assembling of the Legislature by virtue and effect of the adoption of the present Constitution, and continued so during the session of the Senate, and have not ceased to be such.

The relators were not appointed before or during the session of the Legislature. Their appointments have not been confirmed by the Sen-

ate. They are therefore inoperative, have never taken effect, and the defendants are entitled to hold over until appointments to these offices have been perfected and made effective by the required concurrence of the Senate, or, in other words, until successors have been legally appointed and qualified to replace them.

Such is the limit established by our jurisprudence and by that of our sister States, and by the highest judicial authority in the land, upon the exercise of the power of appointment by the Executive when the vacancies occur previous to or during the session of the Senate, and where the law requires the appointment to be made by and with the advice and consent of the Senate.

Baumbach vs. Dubuc, 9 A. 237 ; 5 R. 372 ; 1 Bruse 70 ; 2 Maryland, 355 ; 9 Paige, 507 ; 52 Mo. 559 ; 50 Miss. 607 ; 8 Cal. 408 ; 18 Wend. 578 ; 19 How. 74.

In People vs. Bissell, 49 Cal., it is expressly decided that if the term of the incumbent of an office, filled by an appointment of the Governor, requiring the confirmation of the Senate, has expired, but the incumbent still continues to discharge its duties, there is no such vacancy in the office as will authorize the Governor to fill it without the consent of the Senate.

If an office filled by appointment of the Governor requires the confirmation of the Senate, a vacancy therein, such as will authorize the Governor to fill it, without the concurrence of the Senate, can be caused only by the death or resignation of the incumbent or by the happening of some other event by reason of which the duties of the office are no longer discharged.

In Baumbach vs. Dubuc, 9 A. 237, decided in 1854, the Court said: "That the general grant of appointing power is found in article 47 of the Constitution. It is vested in the Governor acting by and with the advice and consent of the Senate. The special grant in article 48 is restricted to filling for a limited time vacancies occurring during the recess of the Senate, and was made to avoid the inconvenience to the public service which would arise from leaving offices vacant during the interval which might elapse before the re-assembling of the Governor's constitutional advisers."

The jurisprudence on the exercise of the power of appointment by the Executive in instances like that presented in the case of Baumbach vs. Dubuc, has become incorporated in and forms part of the Constitution subsequently adopted, and is explanatory of the articles of the Constitution on this subject. Laws in pari materiæ are to be dealt with under the doctrine so established. Placing ourselves upon the firm principles which underlie the theories by which States are governed and public economy regulated and administered, it is our duty to say that

were a contrary doctrine to prevail touching the Executive appointments and the authority of the Governor to fill vacancies, contrary to the views we have herein expressed, the constitutional or legal requirement of concurrent action by the Senate might be easily evaded, the exercise of the power in question exposed to gross abuse, and the conditions precedent established by law as safeguards in such cases prove mere declarations. We therefore conclude that the article of the Constitution which confers upon the Governor the power to fill vacancies happening during the recess of the Senate do not extend to cases of vacancies occurring previous to or during the session of that body.

Thus conceding, we hold that the appointment of the relators by the Executive, until confirmed by the Senate, is inoperative, and that no successors to the defendants have yet been duly appointed and qualified, and until they are displaced by officers possessing the requisites of this constitutional requirement the defendants must hold over and continue in the discharge of the duties of their respective offices.

It is therefore ordered, adjudged, and decreed that the judgments herein rendered by the Fifth District Court for the parish of Orleans in favor of the defendants be affirmed.

It is further ordered, adjudged, and decreed that the judgments herein rendered by the Fourth District Court for said parish in favor of the relators be reversed, and that there be judgment in favor of the defendants in said cases, the costs in all the cases, in both courts, to be paid by the relators.