THE STATE OF DELAWARE, upon the relation of Reuben Satterthwaite, Jr., Attorney-General, *v.* WELLER E. STOVER.

(*February* 16, 1932.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*James R. Morford* for the relator.

*Reuben Satterthwaite, Jr.,* and *Charles F. Richards* for the respondent.

Superior Court for Kent County, No. 44, July Term, 1931.

RODNEY, J., delivering the opinion of the Court:

It would be a tremendous task to consider, or even to list the mass of authorities having some bearing on the creation or existence of vacancies in public office and of the tenure of office of the appointee. Fortunately, no such duty falls upon us.

A critical examination of the provisions of *Article 3, § 9*, shows that this *Section* deals with at least three classes of vacancies, the numerical arrangement being used merely for convenience:

1. Vacancies in elective offices;

2. Vacancies in appointive offices where the salary and emoluments do not exceed $500;

3. Vacancies in appointive offices where the salary and emoluments do exceed $500.

We are not here concerned with the first two classes

of cases covered by this provision. It is agreed that the office of Adjutant General is one to be filled by the appointment of the Governor.

It is also agreed that the salary and emoluments of the office exceed the sum of $500 and that, therefore, the appointment is, or should be, subject to the consent or confirmation by the State Senate.

It is also agreed that at the time of the original appointment of Ellison, such appointment was a recess or *ad interim* appointment made during the recess of the Senate.

The sole question involved in the first contention of the respondent, is whether Ellison, as a recess or *ad interim* appointee, holds office as a *de jure* officer beyond the following term of the Senate next after his appointment.

It is conceded that the validity of the appointment of General Stover as Adjutant General on July 3, 1931, depends upon whether or not there was at such time a vacancy in the office of Adjutant General.

In *State v. Caulk,* 3 *W. W. Harr.* (33 *Del.*) 344, 138 *A.* 354, 357, this Court said:

"The word 'vacancy,' as applied to a public office, ordinarily has no peculiar or technical meaning, and there is nothing to indicate that it was not used in its ordinary and usual sense in the Constitution of 1897. In that sense, the word 'vacancy' means that the office is unoccupied and without an incumbent, who has a legal right to continue therein until the happening of some future event."

The Court in *State v. Harrison,* 113 *Ind.* 434, 16 *N. E.* 384, 386, 3 *Am. St. Rep.* 663, rather picturesquely says:

"Of course, it is not to be understood that an office cannot become vacant, as respects the appointing power, so long as it remains in the actual physical occupancy of some one who asserts a claim thereto. An office is legally vacant unless the occupant has an unexpired right or title founded in the constitution or law, precisely as a house is vacant of a lawful tenant in case the lessee, without any provision authorizing him to hold over, refuses to surrender at the expiration of his term."

Some authorities have said that vacancies are of three

kinds, original, constructive and absolute or incidental, and have defined them as follows:

1. An original vacancy exists where an office is created and no one has been appointed to fill it;

2. It is constructive when the incumbent has no legal right or claim to continue in office, but can be legally replaced by another functionary;

3. A vacancy is absolute or incidental when the incumbent, having died, resigned, or been removed, there is no one *in esse* discharging the duties. *State v. Rareshide,* 32 *La. Ann.* 934.

While the particular question before us is the existence of a vacancy in the office of Adjutant General of Delaware in July, 1931, yet the solution of this question is contingent upon and must be considered in connection with the original appointment of General Ellison in 1920.

The situation which would have existed had General Ellison been originally appointed for a full term and confirmed by the Senate and was now holding over for want of a valid appointment of a successor, has no legal resemblance and bears no analogy to the present case.

Most of the cases cited as sustaining the view that an incumbent in an office holds that office after the expiration of the term and until his successor has been properly selected and qualified, are based upon the fact that the original holding of the officer had been founded upon an absolute and fixed original appointment or election.

It, therefore, becomes material in considering whether a vacancy existed in the office of Adjutant General of the State of Delaware in July, 1931, to consider the manner of the holding of the then incumbent, General Ellison.

An absolute vacancy existed in the office in 1920 by reason of the resignation of General Wickersham.

There was no inherent power in the Governor alone to fill this vacancy and the power to fill it is expressly vested by the Constitution in the concurrent action of the Gover-

nor and of the State Senate, the Governor making the appointments with the consent of the Senate. Because of the undesirability of vacancies existing in public offices, the Governor was given power, during the recess of the Senate, to make appointments by granting commissions which would expire at the next session of the Senate. The Governor could have no power, during the recess of the Senate, to appoint for any period beyond the next meeting of the Senate, at which time the joint power to fill the vacancy is restored to the Governor, acting concurrently with the Senate.

In *Meecham on Public Officers*, at *page* 68, in speaking of recess or *ad interim* appointments, it is said:

"In the event that it (the appointment) is not confirmed by the Senate at its next session, either because the name was not sent in or was rejected, the appointment becomes inoperative from the moment of the adjournment of that session or from the moment of its rejection, as the case may be."

Again at page 71, the same author says:

"It is usually provided by the Constitution or statute that an officer thus appointed by the Executive alone shall hold the office until the close of the next regular session of the Legislature unless a successor shall have been already appointed. His title, therefore, expires with the next session, even though no successor has been appointed."

To the same effect is 19 *A. & E. Encyc. of Law* 428, where it is said:

"If the vacancy is accidental (or absolute) and occurs previous to or during the recess of confirming body and the concurrence of that body has not been had, the appointment is temporary and contingent upon the confirmation."

In *State v. Rareshide*, 32 *La. Ann.* 934, the Court considered the distinction as to the nature of the supposed vacancy in office at the time of the recess appointment by the Governor. The Court held that where an absolute vacancy (i. e., caused by death, resignation or removal) exists in an office which the Governor can only fill with the concurrence of the Senate, that then the recess appoint-

ment by the Governor alone is temporary and contingent upon confirmation and becomes inoperative from the moment of adjournment.

See, also, *State v. Board of State Assessors,* 24 *La. Ann.* 410.

These cases are directly in point in the present case, as it is here conceded that an absolute vacancy existed at the time of his original appointment and that his appointment was a recess or *ad interim* one.

Attention cannot be too strongly directed to the fact that in this case the question for decision is the right of an *ad interim* appointee to hold over after the adjournment of the next session of the Senate where the appointment had been made during a recess of the Senate under a Constitutional provision authorizing the Governor to fill the vacancy "by granting Commissions which shall expire at the end of the next session of the Senate." We are not concerned with the holding over, after the expiration of a term, where the appointee had originally been regularly appointed and confirmed. Most of the cases cited were of this latter character and few, indeed, involve the question of an *ad interim* appointment. A critical examination of the Constitution of every State in the Union has disclosed but few that embody provisions relative to *ad interim* appointments at all similar to our own.

*Kroh v. Smoot,* 62 *Md.* 172, was a case strongly analogous to the case at Bar under Constitutional provisions set out at a later stage of this opinion. There the Governor appointed Smoot as an *ad interim* appointee during the recess of the Senate. The Senate at its next session approved this *ad interim* appointment. At this same session the Governor appointed Kroh for full term of two years, but the Senate adjourned without confirming this appointment. After this adjournment the Governor again appointed Kroh. Smoot contended that he could hold the

office beyond the "end of the next session of the Legislature" after his appointment. The Court denied this contention, saying:

"All virtue and force of the commission, therefore, terminated with the end of the Legislature; and the present holding, consequently, by the appellee is without commission,—a state of things for which we find no warrant in the Constitution."

And again the Court says:

"We are not justified in totally disregarding the express limitation, that the commission to the party appointed by the Governor during the recess to fill the vacancy 'shall continue in force until the end of the next session of the Legislature, or until some other person is appointed to the same office whichever shall sooner occur.' These terms are imperative, and they must have accorded to them their full force and effect. And as by this limitation the appointment and commission of the appellee terminated with the end of the last Legislature, it follows that from that time there was a vacancy in the office until a successor was appointed as provided by the Constitution to fill such vacancy."

The case of *Sappington v. Slade*, 91 *Md.* 640 (reported as *Hill v. Slade*, in 48 *A.* 64, 65) seems indistinguishable from the present case. In that case a supervisor of elections had died in 1899. The Governor made an *ad interim* appointment naming one Sappington as Supervisor. At the next session of the Senate the Governor (under the law) appointed three new Supervisors, including one Wise and not including Sappington the *ad interim* appointee. Wise (being sick) did not qualify within thirty days and this fact, under the law, created a vacancy. The Governor thereupon reappointed Wise who then qualified. Sappington refused to recognize the validity of this appointment and contended that his original *ad interim* appointment authorized him to hold over until his successor had been appointed and confirmed by the Senate.

The Court said:

"The precise question raised by the pleadings is, did the failure of Wise to qualify under the first commission issued to him authorize Sappington to hold the office until a new appointment should be made by the governor and confirmed by the Senate? This question suggests, because it involves, the further question, how long was Sappington lawfully entitled to hold the office to which he had been

appointed in the fall of 1899 during the recess of the Legislature? The answer to these questions will be found in the constitution of the State. It must be borne in mind that Sappington's appointment was not for a full term of two years and until his successor should be appointed and should qualify. It was a recess appointment for the residue of a partially filled term. *Section* 11 of *Article* 2 of the Constitution makes express provision for just such a contingency. It reads as follows: 'In case of any vacancy during the recess of the Senate, in any office which the Governor has power to fill, he shall appoint some suitable person to said office, whose commission shall continue in force until the end of the next session of the Legislature, or until some other person is appointed to the same office, whichever shall first occur; and the nomination of the person thus appointed during the recess, or of some other person in his place, shall be made to the Senate within thirty days after the next meeting of the Legislature.'

"No matter what language the commission issued to Sappington employed, the words of the Constitution are clear and emphatic, and they declare that the person appointed by the Governor during the recess of the Senate shall hold only until the end of the next general assembly. * * * The organic law thus limits the term of a person appointed by the executive during the recess of the Senate to fill a vacancy, and nothing can extend that term beyond the limit so set. The language is explicit. * * * Under no circumstances could Sappington have held in virtue of the recess appointment beyond the adjournment of the succeeding session of the Legislature. This would have been true even though no one had been nominated to and confirmed by the Senate in his place and stead. To recess appointments like that under which Sappington held the provisions of *Section* 13 of *Article* 2 of the Constitution do not apply. That *Section* declares: 'All civil officers appointed by the Governor and Senate shall be nominated to the Senate within fifty days from the commencement of each regular session of the Legislature; and their term of office, except in cases otherwise provided for in this Constitution, shall commence on the first Monday of May next ensuing their appointment, and continue for two years (unless removed from office) and until their successors, respectively, qualify according to law. * * *'

"Under this *Section* a civil officer holds for the term of two years and until his successor shall qualify, whereas a recess appointment cannot, under *Section* 11, continue beyond the close of the next ensuing Legislature. * * * No legislative enactment can extend a term beyond the limit fixed in the Constitution, which is, in case of an appointment to fill a vacancy, not till the qualification of a successor, but the end of the session of the Legislature following the appointment; and the statute, if providing otherwise, must bend to the organic law. * * * Under *Section* 11 of the Constitution, when a vacancy occurs during a recess of the Legislature in any civil office which the Governor has the power in the first instance to fill by appointment * * * the limit of the tenure of the recess appointee can never extend beyond the close of the session of the ensuing Legislature."

It has been suggested that the Sappington Case could be distinguished from the case at bar because the Maryland provision in *Article 2, § 13,* for an officer holding over until the qualification of a successor was confined to those officers appointed "by the Governor and Senate" while the Delaware provision in *Article 15, § 5,* related to "all public officers" which would include an *ad interim* appointment. This attempt to differentiate the case becomes entirely ineffective in the light of the Maryland decisions. Beginning with *Thomas v. Owens,* 4 *Md.* 221, and extending through *Robb v. Carter,* 65 *Md.* 321, 4 *A.* 282, and down to *Benson v. Mellor* (1927), 152 *Md.* 481, 137 *A.* 294, the Maryland cases all hold that even in absence of any constitutional or statutory provision all officers hold over until their successors are qualified unless the contary intention appears. The same Learned Judge, McSherry, who adhered to these decisions in *Lynn, et al., v. City of Cumberland,* 77 *Md.* 449, 454, 26 *A.* 1001, later, as Chief Justice, rendered the opinion in the *Sappington Case.*

*The Federal Constitution (Article 2, § 2, cl. 3)* reads:

"The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."

The form of the commission issued by the President in a recess appointment has, from the formation of the Government, emphasized the limitation of tenure of the recess appointee by stating that the commission ran to the next session of the Senate "and no longer." *Romero v. U. S.,* 24 *Ct. Cl.* 336, 5 *L. R. A.* 69. The inclusion of these words, however, in the commission would not limit any term to which an appointee would be entitled under the Constitution.

In *United States v. Kirkpatrick,* 9 *Wheat.* 720, 733, 6 *L. Ed.* 199, Judge Story in construing an act containing the same language as the Constitution said:

"The Act under which this appointment was made, authorizes the president, in the recess of the Senate, to make appointments, by granting commissions, which shall expire at the end of their next session. The first commission is, as has been already stated, in conformity to this provision of the act, and is, by express terms, limited to continue to the 'end of the next session of the Senate and no longer.' It follows, therefore, both by the enactment of law and the form of the grant, that the first commission must have expired of itself, at that period; and, as the next session of the Senate ended in April 1814, that is the utmost extent to which it could reach."

See, also, *Romero v. U. S.*, 24 *Ct. Cl.* 331, 5 *L. R. A.* 69.

The tenure of office of a recess appointee under a commission issued by the Governor during the recess of the Senate would seem to be reasonably clear and definite upon the reading of *Section* 9 of *Article* 3. But, it is urged, this *Section* must be read in connection with *Article* 15, § 5, providing:

"All public officers shall hold their respective offices until their successors shall be duly qualified, except in cases herein otherwise provided."

In determining the question as to whether or not *Article* 15, § 5, can be read in connection with *Article* 3, § 9, insofar as it might effect *ad interim* appointments, it is necessary to adopt one of two constructions of *Article* 3, § 9. If the service of the *ad interim* appointee is in effect the same as the term of other officers who have become completely qualified as by appointment and confirmation then it may be possible to consider *Article* 15, § 5, in connection with *Article* 3, § 9. If, on the other hand, the service of the *ad interim* appointee is not comparable to the term of other completely qualified officers but is intended to be but a temporary appointment lasting in any event only until the end of the next session of the Senate, then it is not possible to apply *Article* 15, § 5, to such a situation.

We think that the Constitutional provision of *Article* 3, § 9, that the Governor can fill vacancies "by granting Commissions which shall expire at the end of the next session of the Senate" is equivalent to a declaration

that the recess appointee could legally hold the office no longer than to the end of the next session of the Senate. In this view *Article* 15, § 5, could not be read in connection with an *ad interim* or recess appointment to fill an absolute vacancy. The two provisions could not stand together. The appointee could not by virtue of a single recess appointment hold office for a term absolutely fixed and limited by *Article* 3, § 9, to the "end of the next session of the Senate" and also hold by virtue of *Article* 15, § 5, until his successor has been appointed and confirmed by the Senate when such appointment had not been made at the session of the Senate next succeeding the appointment.

The construction placed by us on *Article* 3, § 9, is, we think, compelled both by the language of the Constitution and by its spirit and meaning.

Under *Article* 3, § 9, there is vested in the Governor a general grant of power to appoint to office and also a special grant of appointing power. The general grant is vested in the Governor acting with the consent of the majority of the members elected to the Senate. The special grant is restricted to filling for a limited time vacancies occurring during the recess of the Senate and was made to avoid the inconvenience to the public service which would arise from leaving offices vacant during the interval which might elapse before the re-assembling of the Senate— the co-ordinate branch charged with the duty of approval or consenting to appointments. One fundamental principle is that in the filling of public offices where the compensation is over $500 the sovereign people acting through the confirmation by the Senate have a right to a voice in the selection of proper persons as public officers and when a vacancy is caused by the death or resignation of a person so approved by the Senate then this right to a voice in the final selection of a successor should be restored at the earliest proper time.

In the light of the foregoing principle let us consider

the application of *Article* 15, § 5, to *ad interim* appointments. If the Governor makes an *ad interim* appointment and if under *Article* 15, § 5, this appointee holds office until his successor is appointed and qualified, of what value would it be for the Governor to send the name of the *ad interim* appointee to the Senate for confirmation? Either the failure to send in the name for confirmation or actual rejection would have the same effect as confirmation. As applicable to a two year term an actual rejection would be equivalent to confirmation. This absurd result will not be readily adopted.

We are of the opinion that *Article* 3, § 9, fixes the time beyond which an *ad interim* appointee cannot, as a *de jure* officer, hold that appointment. Any other construction nullifies the language of the constitution, gives the Governor an arbitrary and unlimited power in filling offices and makes a mockery of the right of confirmation reserved in the representatives of the people, to-wit, by the assent or confirmation by the Senate.

An examination of *Article* 15, *Section* 5, discloses the fact that to the phrase "all public officers shall hold their respective offices until their successors shall be duly qualified" there is added this important qualification "except in cases herein otherwise provided." This exception, of course, limits the application of *Section* 5 to those cases which are not provided for in other parts of the Constitution. In other words, *Article* 15, § 5, does not apply in any case where the Constitution has expressly provided for the duration of the legal right to continue in office. Being of the opinion that *Article* 3, § 9, limits the right of an *ad interim* appointee of the character involved in this case to hold as a *de jure* officer to the end of the session of the Senate next following the appointment then *Article* 15, § 5, can have no application to such case. This Court in *State v. Caulk*, 3 *W. W. Harr.* (33 *Del.*) 344, at *page* 350, 138 *A.* 354, 356, stated one instance coming within the qualifying words

"except in cases herein otherwise provided" as found in *Article* 15, § 5. The remarks of the Court in the cited case, however, are not exclusive and do not cover all cases falling within the exception.

It is agreed in this case that General Ellison was originally appointed as an *ad interim* appointee during the recess of the Senate and that his name should have been submitted for confirmation to the Senate at its meeting next after his appointment; we think that a recess appointee, appointed to fill an absolute vacancy, cannot hold office as a *de jure* officer after the end of the session of the Senate next after the appointment. It necessarily follows, therefore, and we now hold that a vacancy in the office of Adjutant General existed after the end of the session of the Senate next after the appointment of General Ellison on November 10, 1920, to-wit, in the year 1921, and that such vacancy continued to exist until the appointment of General Stover, the respondent in this case.

We have found no authority dealing with an *ad interim* appointment at variance with the conclusion herein reached with the possible exception of *State ex rel. Richardson v. Henderson,* 4 *Wyo.* 535, 35 *P.* 517, 22 *L. R. A.* 751. In that case a constitutional provision somewhat analogous to our *Article* 15, § 5, contained no words qualifying its application, or similar to the words "except in cases herein otherwise provided" as are contained in the Delaware constitution and the provision limiting the tenure of office to the next session of the Legislature appeared as a statutory provision and not as a provision of the organic law itself. Almost all of the authorities cited to us (with the exception of the *Henderson Case*) treat of legal conditions surrounding a supposed "vacancy" at the time of the particular appointment. They are almost without exception cases where an incumbent was in office after the expiration of a term and dealt with attempted appointments to fill vacancies caused by the expiration of the term. Such cases have no

application to the present controversy which admits the existing vacancy at the resignation of General Wickersham and deals only with the term of the recess appointment of General Ellison under an express constitutional provision.

It does not seem amiss, in explanation of the failure of succeeding Governors to appoint to the office of Adjutant General and have such appointees confirmed by the Senate, to add that prior to the appointment of General Ellison, such appointments were not subject to the confirmation of the Senate. Prior to that time the appointee held office and commissions read "during the pleasure of the Governor of Delaware for the time being" and General Ellison's commission itself, in perpetuation of the error, was couched in the same language.

In view of our holding that a vacancy existed in the office of Adjutant General at the time of the appointment of General Stover, the respondent, it is unnecessary and improper for us to consider the second question raised by the respondent, namely, the removal or attempted removal of General Ellison by the Governor and the existence of any vacancy created thereby.

Judgment must be entered in favor of the respondent.