BANK OF WASHINGTON, Appellant,

v.

Daniel J. McAULIFFE, William F. Enright, Jr., Don C. Redding, Michael J. Kuklenski, Thomas C. Hullverson, as members of the Banking Board, Respondents,

and

First Missouri Bank of Washington, Intervenor.

No. 65613.

Supreme Court of Missouri, En Banc.

Sept. 11, 1984.

L.B. Eckelkamp, Jr., William W. Eckelkamp, Washington, for appellant.

Irven L. Friedhoff, John Ashcroft, Atty. Gen., Patricia D. Perkins, Asst. Atty. Gen., Jefferson City, for respondents.

James F. Gunn, Donald Gunn, Jr., St. Louis, for intervenor.

William G. Guerri, St. Louis, for amicus curiae.

HIGGINS, Judge.

The Bank of Washington appeals from affirmance of the grant of a certificate of incorporation to the First Missouri Bank of Washington. The Acting Director of Finance granted the certificate; the Bank of Washington appealed and after de novo review, the State Banking Board affirmed the charter grant. § 361.094, RSMo 1978. The circuit court affirmed the Board's order. The Court of Appeals, Eastern District, reversed, finding that a bank holding company was in fact the alter ego for persons listed as incorporators of the proposed bank, and that a bank holding company could not qualify as an incorporator under section 362.015, RSMo 1978. This Court granted transfer to examine whether a bank holding company not listed as an incorporator under section 362.015, RSMo 1978, can act through natural persons otherwise in compliance with that statute to associate for the incorporation of a bank. The grant of the certificate of incorporation is affirmed.

On May 21, 1980, five individuals associated for the incorporation of a bank to be called "The First Missouri Bank of Washington." These persons intended to sell nearly all of their stock in the proposed bank to a bank holding company, First Missouri Banks, Inc. On September 19, 1980, the Acting Director of Finance issued the bank charter, aware that the incorporators desired to effect a sale to the holding company.

The Bank of Washington asserts now, as it has on each previous appeal, that the charter granted to First Missouri Bank of Washington was void *ab initio* because the Acting Director of Finance was without legal authority to grant that charter; that a bank holding company was the "true

incorporator" of the proposed bank, and was therefore not qualified to associate for the incorporation of a bank under section 362.015, RSMo 1978; that the charter should not have been granted because the application was in fact an application for a branch bank, in violation of chapter 362; and that the charter should not have been granted because the name "First Missouri Bank of Washington" violates section 362.020(1), RSMo 1978, which requires that a corporate name not duplicate or imitate a name previously used within the last fifty years as the title of a bank or trust company incorporated in Missouri. Respondents and intervenor counter that the Acting Director was properly authorized to issue a charter; that the State Banking Board's review superseded the Acting Director's and renders a challenge to the Acting Director's authority irrelevant; that bank holding companies may obtain charters; that the issuance of a charter did not create a branch bank; and that the name given to the new bank was not violative of section 362.020, RSMo 1978.

Several developments taking place between the time of appeal and argument before this Court affect the disposition of certain issues in this case. On May 15, 1984, the day before oral argument in this Court, the governor signed into law H.B. 1373, an act of the Eighty-Second General Assembly that repealed sections 362.015 and 362.030, RSMo, and enacted provisions that permit incorporators of a proposed bank to act on behalf of a bank holding company. The language in the new section 362.015.2 is explicit:

2. When authorized by the finance director as provided in section 362.035 any five or more persons who shall have associated themselves by articles of agreement, in writing, as provided by law, for the purpose of establishing a bank or trust company may be incorporated under any name or title designating such business. Such persons may act on behalf of a bank holding company.

Thus, if this Court were to hold that a bank holding company could not have acted "through" individual incorporators, a new application for charter under the new statute but otherwise under the same circumstances would be valid as to the issue of the holding company's alleged affiliation with the incorporators. This situation, while not rendering the entire cause moot, results in greater significance accorded to the other issues raised in the case. If the decisions on these issues below withstand scrutiny, reversal on the issue of the holding company's actions alone would be judicially inefficient and would ignore an expressed intent of the legislature to clarify the process of bank incorporation in Missouri.

To similar effect, the Court notes that the First Missouri Bank of Washington has merged into the First Missouri Bank of Franklin County. Of course, the validity of the original incorporation is the *sine qua non* in determining whether the merger is possible: one corporation cannot merge with another if it never existed in a legal sense. But, if the validity of the charter is established, the issue concerning the new bank's choice of name is of questionable vitality, given the merger.

Thus, intervening events have affected the need to address each issue in this case in the context in which such issues originally arose; notions of mootness suggest that aspects of this case are no longer of general interest or importance. Such events have altered the nature of the Court's review to the extent that the controversy may be settled by addressing the Acting Director's authority to grant the bank its charter. If the Acting Director was legally entitled to act as he did, dependent issues may resolve themselves.

On August 31, 1979, Governor Joseph Teasdale accepted the resignation of Edgar H. Crist from the position of Commissioner of Finance. On September 5, 1979, the Governor appointed Earl Manning to serve as "Acting Director of Finance" until a permanent director of finance could be appointed and qualified. Mr. Manning's name was never submitted to the senate. On September 19, 1980, Mr. Manning ap-

proved the grant of a bank charter to the proposed incorporators. Appellant challenges Mr. Manning's authority to grant that charter.

Section 361.040, RSMo 1978, provides that the governor shall appoint a director of finance by and with the advice and consent of the senate who shall hold his office at the pleasure of the governor. Article IV, section 51, of the Missouri Constitution provides in pertinent part:

> All members of administrative boards and commissions, all department and division heads and all other officials appointed by the governor shall be made only by and with the advice and consent of the senate. The authority to act of any person whose appointment requires the advice and consent of the senate shall commence, if the senate is in session, upon receiving the advice and consent of the senate. If the senate is not in session, the authority to act shall commence immediately upon appointment by the governor but shall terminate if the advice and consent of the senate is not given within thirty days after the senate has convened in regular or special session.

These provisions read in conjunction establish that one appointed by the governor to serve as Director of Finance must be confirmed by the senate. Article IV, section 4, of the constitution provides as follows, however: "The governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified." The Bank of Washington asserts that article IV, section 51, required Mr. Manning's appointment to be confirmed by the senate, and that because it was not, Mr. Manning's grant of the charter of incorporation was without effect. Respondents and intervenor counter that *article* IV, section 4, directs the governor to fill vacancies by appointment, and that Mr. Manning's position was expressly a temporary one not requiring the advice and consent of the senate.

Construction of article IV, section 51, without reference to other provisions could lead to the conclusion that an Acting Director of Finance or one filling a vacancy in public office must be confirmed by the senate. Should the senate not be in session at the time of appointment, that appointment would ·be operative only until such time as the senate, within thirty days of convening anew, failed to consent to the appointment.

Such a construction appears to conflict with article IV, section 4, which requires only that an appointee's successors be "appointed and qualified." No mention is made of the need to qualify an appointee.

▆▆▆ Constitutional provisions must be construed as a whole so as not to destroy the general intent and purpose of the framers. State at inf. *Martin v. City of Independence*, 518 S.W.2d 63, 66 (Mo.1974). Where constitutional provisions conflict, a construction that brings conflicts into harmony is of particular importance. *Id.* A construction that accommodates both section 51 and section 4 of article IV permits the governor to appoint a person to fill a vacancy in office without the senate's advice and consent so long as that appointment is expressed in terms of a temporary position. Such an appointee may serve until a permanent successor is selected by the governor and consented to by the senate. Art. IV, § 4. The temporary appointee cannot serve beyond the unexpired term of the original appointee whom he replaces, unless at the completion of that term his name is submitted to the senate for advice and consent. *See, e.g., State ex rel. Satterthwaite v. Stover*, 35 Del. 85, 159 A. 239 (1932). Otherwise, he would not be filling a vacancy but serving as a permanent appointee; article IV, section 51, requires such appointments to be submitted to the senate for advice and consent.

▆▆▆ The broad language of article IV, section 51, should not be construed to repeal by implication a constitutional power expressly granted to the governor by article IV, section 4. The uninterrupted functioning of the government has been recog-

nized as a vital end, *State ex rel. Wayland v. Herring*, 208 Mo. 708, 106 S.W. 984, 988 (1907); and construing article IV, section 4, together with article IV, section 51, preserves the governor's power to fill vacancies in offices, recognizes the importance of uninterrupted governmental operations and protects the senate's duty to supervise the appointment of officials. There is no indication from the facts of this case that the appointment of Mr. Manning was in any way an attempt to circumvent the senate's supervisory function over permanent appointments; Mr. Manning's appointment vested him with the authority to act as he did in granting the bank charter.

A cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy. *Euclid Terrace Corporation v. Golterman Enterprises, Inc.*, 327 S.W.2d 542, 544 (Mo.App.1959). When an event occurs which renders a decision unnecessary, the appeal will be dismissed. *Fugel v. Becker*, 2 S.W.2d 743, 746 (Mo. banc 1928). And where an enactment supersedes the statute on which the litigants rely to define their rights, the appeal no longer represents an actual controversy, and the case will be dismissed as moot. *Grogan v. Hays*, 639 S.W.2d 875, 877 (Mo. App.1982).

Appellant's argument that the application for incorporation was in reality an attempt to create a branch bank has been rendered moot by the merger of the properly chartered bank into the First Missouri Bank of Franklin County, as has the challenge to the name originally chosen by the newly formed bank; "First Missouri Bank of Franklin County" is not imitative of "Bank of Washington." § 362.020(1), RSMo 1978. Similarly, the legislature's enactment of section 362.015.2, RSMo 1978, has eliminated the need to address the issue of a bank holding company's ability to act "through" straw parties. Thus, because the Acting Director of Finance possessed the authority to grant the charter,

and the Banking Board approved after a full review, intervening events have made it unnecessary to address arguments no longer in point.

The grant of the charter is affirmed.

WELLIVER and DONNELLY, JJ., concur.

BLACKMAR, J., concurs in result in separate opinion filed.

GUNN, J., concurs in result and concurs in separate concurring opinion of BLACKMAR, J.

JAMES A. FINCH, Jr., Senior Judge, dissents in separate opinion filed.

RENDLEN, C.J., dissents and concurs in separate dissenting opinion of JAMES A. FINCH, Jr., Senior Judge.

BILLINGS, J., not sitting.

BLACKMAR, Judge, concurring in result.

Judge Finch argues, with his customary logic and persuasiveness, that the designation by the then governor of an "Acting Director of Finance," continuing through an entire legislative session and beyond without the tender of his or any other name to the Senate for confirmation, was subversive of Article IV, Section 51, of the Missouri Constitution, which specifies when the authority of a person whose appointment is subject to Senate confirmation begins and terminates. He also demonstrates convincingly that Section 51 was adopted by the voters in 1972 to make impossible the very situation demonstrated by these facts. His argument that Section 4 of Article IV does not apply because of the express provisions to the contrary, which means that the appointment is "otherwise provided by law" within the meaning of that section, is also founded in logic. Missouri voters might remember a situation in which a federal judge and a United States Marshal were kept in office through a series of recess appointments, even though the United States Senate failed, through several sessions, to confirm the

appointments, and may have reacted against that situation.

The principal opinion can be read as giving the governor carte blanche to evade Section 51 by the mere expedient of designating an appointee as "acting," and simply not submitting his name to the Senate. I see no escape from Judge Finch's argument that, under these circumstances, the adoption in 1972 of Section 51 would be totally without effect. The "end of term" limitation suggested by the principal opinion has no meaning in the case of an office which is held at the pleasure of the governor. The governor also could create a vacancy by submitting a name to the Senate, withdrawing it, and then designating another person in an acting capacity.

I am moved, however, by the serious consequences which might ensue from a holding that the functions of the Director of Finance could not be performed by any person other than one appointed in strict accordance with Article IV, Section 51. Chapter 361, RSMo confers numerous powers and imposed sundry duties on the Director of Finance. That official is required, either personally or through deputy, to "visit and examine" every bank and trust company once each year. It would follow from Judge Finch's argument that a deputy could not act unless there were a functioning incumbent,[1] and that, if this Acting Director were wholly without power to act, a bank could have excluded him or his designated deputy as a virtual trespasser. Section 361.260 empowers the Director to call upon banks to restore any impairment of capital. Section 361.300 contains the ultimate power of taking possession of the business and property of a financial institution which is determined to be insolvent. I cannot believe that the state government can be bereft of authority, even for a single day, to exercise the important powers just described. Suppose that a director of finance dies while the legislature is in session. It would not be possible to install a director who meets the requirements of Section 51 without some delay. Yet there must be the authority, somewhere in state government, to seize the assets of a failing bank before they are further dissipated.

Or the Senate, in a dispute with the governor, might delay action on or refuse to confirm an appointment, for Director of Finance or some other office requiring confirmation. How could the governor then take care that the laws be faithfully executed, if no person could act in the absence of Senate confirmation? (Mo. Const., Art. IV, Sec. 2).

There is a solution to the problems presented in the two opinions by reason of which the actions of the purported acting director may be maintained in force, without our giving express sanction to the governor's action and to similar actions of other governors in the future. Fundamental to the interpretation and application of constitutional provisions is the proposition that the people of the state have decreed a functioning government, in which each of the three branches is able to perform its assigned role. Cf. McCulloch v. Maryland, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579 (1819). Constitutional provisions should not be construed in a way which will bring essential government operations to a standstill. This can be accomplished in the present setting by holding that the grant of the charter by the designated Acting Director of Finance had colorable authority which is not subject to challenge by the general public. There is ample precedent for a holding along these lines.

Manning was, at the time of the resignation of Director Crist, the Deputy Director of Finance, required to possess the same qualifications as the director, but not subject to Senate confirmation. See, § 361.060.2, RSMo. If a director were to die suddenly, or were to resign finally while the Senate was in session, the Department of Finance would not cease to exist. In

---

1. The Deputy Director of Finance holds his office at the pleasure of the Director of Finance. § 361.060, RSMo 1978. A deputation without a fixed term expires with the office on which it depends. 67 C.J.S. *Officers* § 278 (1978). The authority of a deputy ceases on the death or disqualification of the principal. 67 C.J.S. Officers § 280 (1978).

this situation one would look to the Deputy Director to take charge of the office until the governor should make another appointment. Speculation as to just how long the deputy might continue under these circumstances is not necessary at this point.

There is also the *de facto* doctrine, which recognizes that the acts of a purported public official may have validity vis-a-vis the general public even though there may be some flaw in the title to the office.[2] I need not analyze the various situations in which this doctrine has been applied. Its existence is based on the doctrine of necessity, which the principal opinion recognizes, and which I find compelling as reason for not holding that the actions of the acting director are void. Sometimes this overriding principle must be applied to fill constitutional lacunae.

If the *de facto* doctrine is to be applied, the challenge here posed gains no force through being posed in the direct proceedings established by law for review of the Acting Director's grant of a charter. Under this doctrine the challenge must come from the public authorities, by a proceeding in the nature of quo warranto. *Boggess v. Pence*, 321 S.W.2d 667, 672 (Mo. banc 1959), citing many cases. Members of the general public may not challenge the authority directly or collaterally. One of my qualifications about the principal opinion is that it would apparently foreordain the result of a quo warranto action, by holding that the "acting" designation was entirely appropriate. It is not necessary to do this to resolve the case before us.

The subordinate nature of the Director's authority is also important in assessing the public interest. The State Banking Board, pursuant to § 361.094.2, RSMo 1978, may hear appeals from upholding the grant of the charter or reversing the director's action. In *Kostman v. Pine Law Bank*, 540 S.W.2d 72 (Mo.1976), we emphasized the subordinate role the Director plays with reference to the Board, and held that the director may not appeal the Board's deter-

minations. Here the ultimate authority possessing discretion under state law has approved the grant. There is no necessity for undoing its decision because of a question about the title of the subordinate official. *Cf. Cherry v. City of Hayti Heights*, 563 S.W.2d 72 (Mo. banc 1978).

If the legislature is of the opinion that a governor is subverting the constitutional provisions by designating acting officials to positions requiring senate confirmation it has the power of impeachment under Art. VII, Sec. 2, of the Missouri Constitution. In mentioning this remedy I intend no criticism of the governor's action in the present case, and make no intimation that he acted other than in entire good faith, but mention the availability of impeachment simply to demonstrate that there are remedies for perceived wilful or persistent constitutional violations if the persons possessing the power are disposed to exercise it. It cannot be claimed, then, that there is no remedy for persistent disregard for constitutional provision. The judicial branch is not the sole guardian of the Constitution.

On the other issues presented I agree with Judge Higgins' opinion. Some of the questions have fallen out of the case because of the merger of the subject bank into another bank which is a part of the same holding company system, but it was represented to us in oral argument that, by means of the incorporation followed by merger, the existing bank obtained authority to operate and maintain a branch which it could not otherwise have established. If so, the case is not moot. I write separately because the case can be disposed of in a satisfactory manner without an outright sustaining of the designation of an acting director. Just as the home run off George Brett's super pine tar bat was not "void," the charter issued to the intervenor should not be held "void." I do not think that the remand to the present Director of Finance for further action is necessary under present circumstances.

2. *Cf. Harbaugh v. Winsor*, 38 Mo. 327, 332 (1866); *Boggess v. Pence* 321 S.W.2d 667, 672 (Mo. banc 1959). *Cf. Cherry v. City of Hayti Heights*, 563 S.W.2d 72 (Mo. banc 1978).

I agree that the judgment should be affirmed.

JAMES A. FINCH, Jr., Senior Judge, dissenting.

I respectfully dissent. For reasons subsequently recited I would hold that Earl L. Manning had no right or authority on September 19, 1980, to issue a bank charter. Hence, I would reverse and remand the decision of the Circuit Court with directions.

It is clear that persons appointed as director of finance require senate confirmation. The position is created by § 361.040, RSMo which provides that such officer "shall be appointed by the governor *by and with the advice and consent of the senate* and shall hold his office at the pleasure of the governor." (Emphasis added.)

This requirement of senate confirmation was affirmed and strengthened by art. IV, § 51 of the Missouri Constitution which was adopted by the people of Missouri at a special election on August 8, 1972. It provides, *inter alia*, that all department and division heads appointed by the governor "shall be made only by and with the advice and consent of the senate." Section 51 then goes on to provide as follows:

The authority to act of any person whose appointment requires the advice or consent of the senate shall commence, if the senate is in session, upon receiving the advice and consent of the senate. If the senate is not in session, the authority to act shall commence immediately upon appointment by the governor but shall terminate if the advice and consent of the senate is not given within thirty days after the senate has convened in regular or special session. If the senate fails to give its advice and consent to any appointee, that person shall not be reappointed by the governor to the same office or position.

Finally, in 1974 the General Assembly adopted the Reorganization Act of 1974 part of which is now contained in Chapter 620, RSMo. Section 620.010(8) thereof provides as follows:

The powers, duties and functions vested in the division of finance, chapters 361, 362, 364, 365, 367, 408, RSMo. and others, are transferred by type II transfer to the department of consumer affairs, regulation and licensing. There shall be a director of the division who shall be nominated by the department director and appointed by the governor with the advice and consent of the senate.

Thus, at the times involved in this proceeding, it is very clear that the division of finance was located in the department of consumer affairs, regulation and licensing and was headed by a director who was to be nominated by the department director and appointed by the governor with the advice and consent of the senate. Such appointment was subject to the provision in art. IV, § 51 of the Missouri Constitution that if, as here, the senate was not in session at the time of the appointment, the authority of the appointee should commence immediately but that such authority would terminate if the advice and consent of the senate was not given within thirty days after the senate convened in either regular or special session.

On August 31, 1979, Governor Teasdale accepted the resignation of Edgar H. Crist as director of finance. On September 5, 1979, he appointed Earl L. Manning to serve as acting director, until a permanent director of finance could be appointed and qualified. Thereafter, Manning continued to serve in that capacity but his appointment was never submitted to the senate for its advice and consent although the senate met in both special and regular session during the time Manning was exercising the authority of director of finance. On September 19, 1980, more than a year after his appointment, he issued the bank charter in question to the First Missouri Bank of Washington.

In holding that senate confirmation of Mr. Manning was unnecessary and that he had authority to issue the bank charter on September 19, 1980, the principal opinion relies on art. IV, § 4 Mo. Const. which says

that "[t]he governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified." The opinion concludes that to hold that senate confirmation of Manning as acting director was required would result in a conflict between sections 4 and 51 of art. IV, whereby a constitutional power expressly granted to the Governor by § 4 would be repealed by implication. The majority goes on to say that the court should adopt "a construction that accommodates both sections 51 and section 4 of Article IV." Such construction, the opinion says, "permits the Governor to appoint a person to fill a vacancy in office without the senate's advice and consent so long as that appointment is expressed in terms of a temporary position." The opinion offers the following explanation of the conclusion it reaches:

> Such an appointee may serve until a permanent successor is selected by the governor and consented to by the senate. Art. IV, § 4. The temporary appointee cannot serve beyond the unexpired term of the original appointee whom he replaces, unless at the completion of that term his name is submitted to the senate for advice and consent. *See e.g., State ex rel. Satterthwaite v. Stover*, [35 Del. 85] 159 A. 239 (Del.1932). Otherwise, he would not be filling a vacancy but serving as a permanent appointee; Article IV, section 51, requires such appointments to be submitted to the senate for advice and consent.

I cannot agree that designation of Mr. Manning as "Acting Director of Finance" excused the requirement of senate confirmation. I so conclude for several reasons.

In the first place, the principal opinion bases and seeks to justify its conclusion on the premise that Manning was completing an "unexpired term" and that no senate confirmation was required so long as Manning did not serve beyond the completion of that unexpired term. However, the opinion neglects to address the question of what "term" Crist had been appointed for and

what, if any, "unexpired term" remained at the time Manning was appointed. It simply assumes that an "unexpired term" existed when Manning was appointed and that it continued beyond the time when the bank charter was issued. In fact, there was no unexpired term remaining after Mr. Crist's resignation. In accordance with the provisions of § 361.040, he had been appointed to serve at the pleasure of the governor, not for a fixed term of so many years, and when the governor accepted his resignation that term expired. One appointed to succeed him would be appointed for a new term lasting at the pleasure of the governor. Since there was no unexpired term for Manning to serve, application of the language of the principal opinion would require that senate confirmation be obtained because the opinion says "[t]he temporary appointee cannot serve beyond the unexpired term of the original appointee whom he replaced unless at the completion of that term his name is submitted to the senate for advice and consent." Of course, Manning could serve until the expiration of thirty days of the first session of the senate after his appointment but his authority would cease at that time, under the provisions of art. IV, § 51, unless his name had been submitted to the senate and such appointment had received the advice and consent of the senate.

Secondly, even assuming the existence of an "unexpired term," upholding Manning's authority on the basis that under art. IV, § 4 Mo. Const. the governor may appoint someone as acting director who may serve without senate confirmation "until a permanent successor is selected by the governor and consented to by the senate" results in nullification of the very explicit provisions of art. IV, § 51. Both the history of the adoption of that amendment and the clear language of § 51 itself show that such an interpretation is not tenable.

When interpreting an amendment to the Constitution, it is proper to look to the prior state of the organic law and the conditions sought to be remedied by the amendment. *Lovins v. City of St. Louis,*

336 Mo. 1194, 84 S.W.2d 127 (Mo. banc 1935). The record shows that on June 25, 1969, the attorney general issued Opinion No. 293 to Honorable Robert A. Young. In that opinion he expressed his official opinion that when a vacancy occurs in the office of director of a department, the governor, without the advice and consent of the senate, may designate an acting director who can perform the duties of that office until such time as the office is properly filled by a qualified person duly appointed. In other words, it said that the governor could do in 1969 precisely what he did here in 1979. In a subsequent session of the legislature, a proposed constitutional amendment was introduced and approved for submission to the people. (Senate Committee Substitute for House Joint Resolution No. 65 of the 76th General Assembly—Laws 1973 1st Ex. Sess. S.B. 1.) Senator Richard Webster testified that it was the issuance of Opinion 293 which prompted the introduction and enactment of this proposed constitutional amendment. This amendment was adopted by the people of Missouri as art. IV, § 51 Mo. Const. at a special election on August 8, 1972. Its language clearly shows that what Opinion No. 293 said could be done in 1969 was no longer to be permissible. Such intention was expressed in clear and detailed language which says that if a department head is appointed when the senate is not in session, he could serve in and exercise the authority of the office until the senate convenes and thereafter may continue so to act until the end of thirty days after the senate convenes. At that time, absent senate confirmation, his authority to act *terminates*. Furthermore, he cannot thereafter be reappointed by the governor to that office.

In spite of the explicit language of art. IV, § 51, and in spite of the evidence as to what prompted submission and adoption of that amendment, the principal opinion holds that Manning was authorized to remain in office and exercise the authority of the office through and after two sessions of the senate, in neither of which his appointment was confirmed. In such situation the principal opinion holds that he could perform all the functions of a department head for an extended period without ever being subjected to the scrutiny which is contemplated in a system wherein such appointments are to be made only with the advice and consent of the senate.

An even more flagrant nullification of art. IV, § 51, made possible by the principal opinion in this case, can be hypothesized. Suppose at the outset of his term a governor appoints a director of finance. The appointment is submitted to and confirmed by the senate. As soon as the legislature adjourns in June, the governor obtains a resignation from or removes the director of finance, who, of course, is serving at his pleasure. Section 361.040, RSMo. The governor then designates an acting director of finance to serve until a permanent director of finance can be appointed and qualified. The person so named was not appointed at the outset of the governor's term because the Governor knew that such person could not and would not receive senate confirmation. Under the holding of the principal opinion, no senate confirmation of his appointment as acting director would be required. The principal opinion says that as acting director he could serve without senate confirmation "until a permanent successor is selected by the governor and consented to by the senate." Assume that during the remainder of his term (more than three years) that governor never appoints anyone as permanent director of finance. The acting director would continue to serve during all of that time without his name ever going to the senate. As a result the provision in art. IV, § 51 for termination of the authority of an appointee as a department head if he does not receive senate confirmation is rendered ineffective. The philosophy of government embodied in our constitution that certain appointees must have senate confirmation as a prerequisite to their service is flaunted.

Surely it is clear that such scenarios were not what the General Assembly had in mind when in 1972 it voted to submit art.

IV, § 51, to the voters of Missouri. Nor are they what the people intended when they approved that constitutional amendment on August 8, 1972. They certainly are not scenarios which would be permissible if the language of art. IV, § 51 is given its clear and unambiguous meaning and applied accordingly. The principal opinion in effect states to the Missouri senate that by judicial interpretation this Court is, in part, excising the constitutional and statutory requirement of senate confirmation of the director of finance imposed by art. IV, § 51 Mo. Const. and §§ 361.040 and 620.010(8), RSMo. Such excising is accomplished by saying that the director is "acting" until the Governor sees fit to appoint someone else whom the senate confirms.

Finally, I do not find a conflict between art. IV, § 4 and art. IV, § 51 as does the principal opinion.

In *State ex rel. Wayland v. Herring,* 208 Mo. 708, 106 S.W. 984 (1907), this Court construed the predecessor to present art. IV, § 4 as providing for the filling of vacancies only "when no other provision is made by law." *Id.* at 990. Present art. IV, § 4 expressly states that "[t]he governor shall fill all vacancies ... unless otherwise provided by law...." It is clear that appointment of all directors of finance is "otherwise provided by law." Art. IV, § 51, adopted August 8, 1972, is a clear directive that the governor shall appoint all division and department heads only by and with the advice and consent of the senate. There is no exception to such provision of art. IV, § 51 anywhere in the Missouri Constitution or in the statutes providing the governor with power to appoint an "acting" director of finance. Nor is there any constitutional or statutory provision for appointing an "acting" director to serve indefinitely without advice and consent of the senate. Recognition of this limitation in § 4 on the power of the Governor to appoint eliminates the conflict between §§ 4 and 51 perceived by the principal opinion.

When the governor on September 5, 1972, designated Mr. Manning as "Acting" Director of Finance he could have named him instead as "Director" of Finance. As such he nevertheless would have been serving at the pleasure of the governor. If, subsequently, the governor found someone else whom he desired to appoint as director, he had the means and authority to accomplish that change. In other words, there was no necessity to name Manning as "Acting" Director to assure continuity in office or to provide flexibility if the governor later desired to appoint someone else. Of course, if Manning had been appointed as director, the governor would have been obligated, pursuant to art. IV, § 51 Mo. Const., §§ 361.040 and 620.010, RSMo. to submit his name to the senate for its advice and consent.

Even if it be assumed that a conflict exists between §§ 4 and 51, the solution proposed by the principal opinion is not the correct one. The test for determining whether conflict exists between two constitutional provisions is whether one provision prohibits what another permits or vice versa, *State ex inf. Ashcroft ex rel. Bell v. City of Fulton,* 642 S.W.2d 617 (Mo. banc 1982). In such case the more recently adopted provision prevails over the earlier one if, in fact, any such conflict exists. *Ederer v. Dalton,* 618 S.W.2d 644 (Mo. banc 1981).

It is clear from the foregoing that Manning was without authority on September 19, 1980, to grant the bank charter in question. Under the provisions of art. IV, § 51, when the senate convened in special session on December 3, 1979, it had thirty days in which to give its consent to the September 5, 1979, appointment of Manning. Such advice and consent not having been given, Manning's authority terminated thirty days after December 3, 1979. Article IV, § 51. Disposition of this case on this basis makes unnecessary the consideration in this dissent of other issues addressed by the principal opinion.

Because the grant of the Certificate of Incorporation was void *ab initio* the State Banking Board could not cure this void act on appeal by a simple reaffirmance, *see*

§ 361.094, RSMo. 1978, nor could the circuit court.

The charter grant was a nullity and the circuit court's affirmance of the Board's order should be reversed. I would direct that the cause be remanded with directions to the circuit court that the cause be remanded to the Director of Finance for proper consideration of the original application for charter or for such further action as is requested on the still pending application for charter.