**Garrell L. MITCHELL,
Plaintiff–Respondent,**

v.

**MISSOURI STATE HIGHWAY PA-
TROL, et al.,
Defendants–Appellants.**

**No. 16921.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 1991.

Motion for Rehearing or Transfer to Su-
preme Court Denied April 10, 1991.

Application to Transfer Denied
June 11, 1991.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Jerry W. Venters, Venters, Pletz & Reed, P.C., Jefferson City, for plaintiff-respondent.

PARRISH, Presiding Judge.

Respondent brought this action in the circuit court for administrative review of his dismissal from employment as a Missouri State Highway Patrol trooper. He

tained and the schedule has not been considered      by this court.

was discharged for misconduct by order of the acting superintendent of the Missouri State Highway Patrol, following a recommendation for dismissal by a review board convened pursuant to § 43.150.[1] The circuit court reversed the decision of the acting superintendent and ordered respondent reinstated with all back pay and benefits. That order was appealed. This court reverses and remands with instructions.

There is only one issue on appeal. That issue is whether the acting superintendent of the Missouri State Highway Patrol was lawfully serving in that capacity, and thereby possessed with authority to discharge respondent when the order for respondent's discharge was entered.

Respondent's discharge occurred subsequent to the retirement of Colonel Howard Hoffman as superintendent of the Missouri State Highway Patrol. Colonel Hoffman retired August 1, 1988. Governor Ashcroft appointed John H. Ford to succeed Colonel Hoffman as superintendent. §§ 43.030 and 650.005.2.[2] That appointment was made in 1988 at a time when the Missouri Senate was not in session. The senate convened, for the first time following the appointment of Colonel Ford, on January 4, 1989 (the first Wednesday after the first Monday of January). Mo. Const. art. III, § 20. Governor Ashcroft transmitted the appointment of Colonel Ford to the Missouri Senate for its "advice and consent" as required by Mo. Const. art. IV, § 51, on that date.

On January 30, 1989, less than thirty days after the senate convened, Governor Ashcroft withdrew the appointment of Colonel Ford from consideration by the senate. The senate had not acted on that appointment prior to the time it was withdrawn by the governor. On the same date, Governor Ashcroft directed that Colonel Ford serve as acting superintendent of the Missouri State Highway Patrol until a permanent superintendent was appointed and confirmed. In April 1989, Colonel C. E. Fisher became superintendent, thereby causing Colonel Ford's tenure as acting superintendent to cease.[3]

The disciplinary proceedings that led to respondent's discharge occurred while Colonel Ford commanded the Missouri State Highway Patrol. On January 4, 1989, a formal complaint against respondent was filed with Colonel Ford. On January 5, 1989, by order of Colonel Ford, respondent was placed on administrative leave effective January 6, 1989, pending a disciplinary hearing. The January 5 order also appointed a review board. § 43.150. The review board conducted its hearing on the complaint January 30, 1989, at the conclusion of which the board reported findings that twenty-two of the charges made against respondent were true and that the charges were sufficiently serious to warrant removal. The members of the board of review were unanimous in those determinations. On March 10, 1989, Colonel Ford ordered respondent's employment as a member of the Missouri State Highway Patrol terminated effective March 11, 1989.

The trial court held that Colonel Ford did not have authority to order the dismissal of respondent. It reasoned that Colonel Ford's authority to perform the duties of superintendent of the Missouri State Highway Patrol "was terminated on January 30, 1989, when the Honorable John Ashcroft, Governor of the State of Missouri, withdrew Colonel Ford's nomination as permanent superintendent of the Highway Patrol." The trial court based its decision upon its conclusion that the "appointment of Colonel Ford as 'acting' superintendent on January 30, 1989, was without Constitutional or statutory authority and was, in fact, in contravention of the Missouri Constitution, specifically Article IV, Section 51."

In *Bank of Washington v. McAuliffe*, 676 S.W.2d 483, 486 (Mo. banc 1984), the supreme court upheld the authority of the governor to temporarily fill a vacancy in an

---

1. References to statutes are to RSMo 1986.

2. § 650.005.2, as applicable to the facts of this case, states:

The governor by and with the advice and consent of the senate shall appoint the superintendent of the patrol.

3. Missouri Manual 1989–90.

office requiring the advice and consent of the senate. The court determined that a temporary appointment to such an office could be made by the governor without senate action. The court based its holding upon Mo. Const. art. IV, § 4. Article IV, § 4 provides "[t]he governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified."

In *Bank of Washington* the appellant bank contended that since the appointed Acting Director of Finance had not been submitted to the senate for confirmation, as required by Mo. Const. art. IV, § 51, he was not legally entitled to issue bank charters and, therefore, his purported attempt to grant a particular bank charter was void *ab initio*. In finding that the questioned bank charter was validly issued, the court construed applicable constitutional provisions as follows:

A construction that accommodates both section 51 and section 4 of article IV permits the governor to appoint a person to fill a vacancy in office without the senate's advice and consent so long as that appointment is expressed in terms of a temporary position. Such an appointee may serve until a permanent successor is selected by the governor and consented to by the senate.

*Id.*

■ Respondent concedes that *Bank of Washington* determined that the governor has authority to make a temporary appointment without obtaining the advice and consent of the senate. Respondent argues, however, that the temporary appointment of Colonel Ford was used as a means to avoid submitting his name as a permanent appointee to the senate for its advice and consent and, under these facts, the designation of Colonel Ford as acting superintendent was unlawful. Respondent argues that the holding in *Bank of Washington* places limitations on a governor's power to make temporary appointments and refers to the following language at 1.c. 486:

The temporary appointee cannot serve beyond the unexpired term of the origi-

nal appointee whom he replaces, unless at the completion of that term his name is submitted to the senate for advice and consent.

Respondent then points to factual differences between *Bank of Washington* and this case. In *Bank of Washington* the temporary appointee, the Acting Director of Finance, had not previously been appointed as permanent Director of Finance; whereas in this case, Colonel Ford was previously appointed superintendent and his name was timely submitted to the senate for confirmation, but withdrawn prior to expiration of thirty days after the senate convened and without any action having been taken by the senate. Respondent points to the last two sentences of Mo. Const. art. IV, § 51 that state:

If the senate is not in session, the authority to act shall commence immediately upon appointment by the governor but shall terminate if the advice and consent of the senate is not given within thirty days after the senate has convened in regular or special session. If the senate fails to give its advice and consent to any appointee, that person shall not be reappointed by the governor to the same office or position.

The conclusion respondent then draws is that since the senate did not give its advice and consent as to Colonel Ford's appointment, the governor's attempt to appoint Colonel Ford as acting superintendent was a nullity and, accordingly, Colonel Ford did not have authority to terminate respondent's employment. Because the final decision on termination of an employee of the Missouri State Highway Patrol must be made by the superintendent, *Gamble v. Hoffman*, 695 S.W.2d 503, 508 (Mo.App. 1985), respondent contends the decision to terminate him was not validly made—there was no superintendent to make the decision.

Respondent's argument is not persuasive. In *Bank of Washington*, at 1.c. 486–87, the court reasoned:

The uninterrupted functioning of the government has been recognized as a vital end, [citation omitted]; and constru-

ing article IV, section 4, together with article IV, section 51, preserves the governor's power to fill vacancies in offices, recognizes the importance of uninterrupted governmental operations and protects the senate's duty to supervise the appointment of officials. There is no indication from the facts of this case that the appointment of [the Acting Director of Finance] was in any way an attempt to circumvent the senate's supervisory function over permanent appointments.

And, in the concurring opinion of Blackmar, J., the following observation was made:

> The "end of term" limitation suggested by the principal opinion has no meaning in the case of an office which is held at the pleasure of the governor.

*Id.* at 488. Judge Blackmar then recognized that serious consequences might ensue if the functions of an important office of state government (there the Director of Finance) could not be performed by anyone other than a person "appointed in strict accordance with Article IV, Section 51." The concurring opinion hypothesized, as one of the types of serious problems that could arise, that "the Senate, in a dispute with the governor, might delay action on or refuse to confirm an appointment, for Director of Finance, or some other office requiring confirmation." The rhetorical question was posed, "How could the governor then take care that the laws be faithfully excuted [sic], if no person could act in the absence of Senate confirmation? (Mo. Const., Art. IV, Sec. 2)." *Id.*

■ In this case, Colonel Ford's authority to act as superintendent of the Missouri State Highway Patrol did not terminate because "the advice and consent of the senate [was] not given within thirty days after the senate [had] convened." Colonel Ford's appointment as superintendent was not before the senate for the requisite thirty days after it convened. The superintendent "hold[s] office at the pleasure of the governor." § 43.030. On January 30, 1989, the governor terminated Colonel Ford's appointment as superintendent. That appointment was withdrawn from consideration by the senate. There was no appointment that remained before the senate upon which it could give its advice and consent. The governor's withdrawing the appointment prior to the thirty days in which the senate could have otherwise given or failed to give its advice and consent prevented the senate from either giving its advice and consent or failing to do so.

On January 30, 1989, Colonel Ford was appointed acting superintendent. That appointment was temporary as demonstrated by the subsequent appointment of Colonel Fisher, with the advice and consent of the senate, in April 1989 during the same session that was convened January 4, 1989. The timely appointment of Colonel Fisher evidences that Colonel Ford's appointment as acting superintendent on January 30, 1989, was not an attempt to circumvent the senate's supervisory function over permanent appointments.

The trial court erred in its application of constitutional provisions in that it erroneously determined that the appointment of Colonel Ford as acting superintendent of the Missouri State Highway Patrol on January 30, 1989, was in contravention of Mo. Const. art. IV, § 51. The order discharging respondent as an employee of the Missouri State Highway Patrol entered March 10, 1989, by Colonel Ford was valid. The circuit court's order declaring the discharge invalid is reversed. This case is remanded to the circuit court for entry of its order, consistent with the views set forth in this opinion, affirming the discharge of respondent from employment with the Missouri State Highway Patrol.

FLANIGAN, C.J., and SHRUM, J., concur.