**Sherry A. PUTNAM–HEISLER, Appellant,**

v.

**COLUMBIA FOODS, Respondent.**

**No. WD 56027.**

Missouri Court of Appeals, Western District.

April 20, 1999.

Robert Tyler, Columbia, for appellant.

Richard Montgomery, Columbia, for respondent.

HANNA, Presiding Judge.

The claimant, Sherry Putnam–Heisler, appeals from the Labor and Industrial Relations Commission's decision in favor of the employer, Columbia Foods. The commission affirmed the administrative law judge's decision to deny the claimant's request for workers' compensation benefits. In her sole point on appeal, the claimant complains that the commission's decision is against the weight of the evidence in that the medical evidence established that her work activity aggravated her carpal tunnel syndrome.

In *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 570 (Mo.App.1995), this court summarized for the two-step review process for an award made by the commission in workers' compensation decisions. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the commission's decision. *Id.* If the court finds that it does, the second step requires that the court make a determination as to whether the decision is against the overwhelming weight of the evidence. *Id.* In this second step, all of the evidence in the record is considered, including evidence not favor-

able to the decision. *Id.* We are not bound by the commission's conclusions of law, or by its application of law to the facts. *Division of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393 (Mo. banc 1996). We do not defer to the commission on decisions that are interpretations or applications of law rather than determinations of fact. *West v. Posten Constr. Co.,* 804 S.W.2d 743, 744 (Mo. banc 1991). In cases where the commission adopts the findings and award of the administrative law judge before whom the witnesses testified, the resulting consistency as to credibility determinations is a powerful reason to uphold the award on appeal. *Davis,* 903 S.W.2d at 571.

The claimant worked for Columbia Foods, commencing on March 19, 1992, packing and loading food products. Approximately six months later she went to work in the warehouse driving a forklift and performing data entry. In October 1994, she returned to packing and loading food products. After two months in this position, she went to see her primary physician, Dr. Kay, complaining of numbness in her neck, forearms, and wrists. The claimant informed her employer of her problem and the employer sent her to Dr. Cooper. He recommended light duty. The claimant subsequently sought treatment from several other doctors. On June 20, 1995, the claimant was placed on "Leave of Absence/Medical Restrictions." The claimant's requests for additional medical care from the employer were denied. On July 20, 1995, the claimant sought treatment from Dr. Beckett, an orthopedic surgeon. Dr. Beckett diagnosed the claimant's condition as carpal tunnel syndrome.[1] Shortly thereafter, at the employer's request, claimant underwent a medical examination with Dr. Ollinger, a plastic and reconstructive surgeon. He diagnosed her symptoms as a result of poor posture, not carpal tunnel syndrome.

On November 9, 1995, Dr. Beckett performed carpal tunnel release surgery on both of the claimant's wrists, at her request. The surgery alleviated the claimant's pain and she returned to work on March 17, 1996. On June 30, 1996, the claimant filed a claim seeking temporary total disability benefits for the period of June 20, 1995 through March 17, 1996, and reimbursement for her medical expenses. The evidence presented at the hearing consisted of: (1) a written medical report prepared by Dr. Beckett; (2) Dr. Beckett's bills; (3) the deposition testimony of Dr. Ollinger; and (4) the claimant's testimony.

In his medical report, Dr. Beckett concluded that the claimant had bilateral carpal tunnel syndrome that was aggravated by her work conditions, but not caused by them. Alternatively, Dr. Ollinger testified by deposition that "except for the non-specific soreness of her wrists and forearms ... I cannot relate the [claimant's] present condition to her work at Columbia Foods." The claimant testified that her job required that she perform many "repetitive hand movements." She did not offer any further explanation regarding her job duties or the cause of her injury.

Based on this evidence, the ALJ determined that claimant failed to meet her burden of proving that she suffered from carpal tunnel syndrome, and that her employment was the cause of a compensable injury. The ALJ found, in pertinent part, that:

> Claimant's testimony regarding her job requirements in late 1994 was simply that they required "many repetitive hand motions." There was no description of what those hand motions were, what type of grasping, pulling, carrying or lifting was required, what weights or other stresses were involved, nor any indications of the nature and frequency of the hand motions, other than Claimant's testimony quoted above. Claimant also told Dr. Ollinger that she had worked for two years driving a fork lift and doing data entry prior to October 1994, when she was placed back in operations "loading and packing hot dogs." This history is consistent with that given to Dr. Beckett that Claimant's symptoms

---

1. Dr. Beckett had seen the patient previously for other musculoskeletal problems, beginning in November 1989. At that time she was complaining of shoulder pain, and had numbness in her fingers. She was treated with nocturnal wrist splints for possible carpal tunnel syndrome. The claimant was also suffering from knuckle pads.

"coincided with the changing jobs to one where she was required to do more repetitive hand movements." Thus, in December 1994, when Claimant first complained of her symptoms, she would have been on the "repetitive" job for no more than two months. Finally, the evidence as a whole shows a history of upper extremity problems, including a treatment in 1989 for a possible carpal tunnel syndrome, complaints in 1993 of bilateral hand pain and stiffness, as well as current hand problems. Thus, I believe the evidence as a whole does not lead to a conclusion that the work "aggravation" described by Dr. Beckett was a substantial factor in the cause of Claimant's alleged carpal tunnel syndrome; if anything, the evidence as a whole would suggest that the aggravation caused by a two month period of "many repetitive hand motions" would be nothing more than a triggering or precipitating factor.

The Labor and Industrial Relations Commission affirmed the ALJ's decision, and made the following additional findings of fact:

Claimant began to experience discomfort in her wrists, forearms, and neck in December 1994. There was no evidence presented that described what hand or wrist motions claimant had been performing in her work for employer. The record contains no evidence of the nature and frequency of any hand or wrist motions involved in claimant's work. There was no evidence of what, if any, grasping, pulling, carrying, or lifting was required by claimant's job. The record contains no evidence of what, if any, weights or other stresses were involved in claimant's work. After undergoing carpal tunnel releases, claimant, with Dr. Beckett's consent, performed many repetitive hand motions at work. Claimant did not describe those hand motions.

The evidence as a whole does not lead to a conclusion that the work "aggravation" described by Dr. Beckett was a "substantial factor" in the cause of claimants alleged carpal tunnel syndrome. The evidence as a whole suggests the aggravation caused by a two-month period of "more repetitive hand movements" was nothing more than a "triggering or precipitating factor."

The claimant contends that the overwhelming weight of the evidence established that her work condition aggravated her preexisting condition of carpal tunnel syndrome. She refers us to three recently decided cases for the proposition that a preexisting but non-disabling condition does not bar recovery of compensation where a work-related accident causes the condition to escalate to the level of a disability.[2] *See Smith v. Climate Engineering,* 939 S.W.2d 429, 433–34 (Mo. App.1996); *Anderson v. Noel T. Adams Ambulance Dist.,* 931 S.W.2d 850, 854 (Mo.App. 1996); *Miller v. Wefelmeyer,* 890 S.W.2d 372, 376 (Mo.App.1994).

We do not dispute that these cases hold that the aggravation of a preexisting condition can be sufficient for recovery, where the claimant establishes a direct causal link between the worker's workplace or job duties and the aggravation of the preexisting injury. In each of the cases cited by the claimant, the court specifically found that the claimant met the evidentiary burden of proving that their work condition resulted in the aggravation of a preexisting condition. *Smith,* 939 S.W.2d at 433–34; *Anderson,* 931 S.W.2d at 854; *Miller,* 890 S.W.2d at 376. *Cf. Estes v. Noranda Aluminum, Inc.,* 574 S.W.2d 34, 38 (Mo.App.1978)(holding that a causal connection between claimant's work and his condition is not supported by the record).

■ In the current case, the commission determined that the claimant did not meet her burden of proving that the aggravation of her alleged carpal tunnel syndrome was causally connected to her work. In Dr. Beckett's written medical report, he concludes that the claimant "had bilateral Carpal Tunnel Syndrome [that was] aggravated by her work conditions but not caused by them." However, he does not describe the nature of claimant's work activities, much less how the claimant's work duties aggravated her carpal tunnel syndrome. Similarly, the claimant

---

**2.** The claimant also erroneously contends that the ALJ and the commission found that the

claimant suffered from carpal tunnel syndrome.

testified only that her job required that she perform many "repetitive hand movements." She did not explain what those hand movements were, nor did she describe the frequency of her hand motions. Because the evidence was unclear as to what tasks the claimant performed at her job, the commission properly held that she failed to sustain her burden that her carpal tunnel syndrome resulted from her employment.

Moreover, the claimant's argument disregards Dr. Ollinger's deposition testimony and, instead, relies completely on Dr. Beckett's conclusion that the claimant had bilateral carpal tunnel syndrome. Specifically, Dr. Ollinger testified in his deposition that the claimant "does not have carpal tunnel syndrome. . . . Except for the non-specific soreness of her wrists and forearms . . . I cannot relate [the claimant's] present condition to her work at Columbia Foods." Obviously, the ALJ and the commission found Dr. Ollinger's deposition testimony more credible than Dr. Beckett's written medical report. Thus, by arguing that Dr. Beckett's report constitutes sufficient evidence to establish a causal connection between her work and her injury, the claimant is challenging the commission's choice between two conflicting medical opinions.[3]

**■** Both the ALJ and the commission noted that it was claimant's responsibility to prove her injury was aggravated by her work conditions It is in the commission's sole discretion to determine the weight to be given expert opinions, and that cannot be reviewed by this court. *Cahall v. Cahall*, 963 S.W.2d 368, 371 (Mo.App.1998). When the right to compensation depends upon the acceptance of one of two conflicting medical theories, the issue is one of fact for determination by the commission. *Anderson*, 931 S.W.2d at 854 (citing *Low v. ACF Industries*, 772 S.W.2d 904, 907 (Mo.App.1989)). In the current case, substantial and competent evidence supports the commission's decision, and it is not against the weight of the evidence. Accordingly, we affirm the judgment of the

commission denying claimant's request for benefits.

ELLIS and RIEDERER, JJ., concur.

---

3. The administrative law judge and the commission specifically found that the "aggravation" described by Dr. Beckett was not a substantial

factor in the cause of claimant's alleged carpal tunnel syndrome; if anything, it was nothing more than a triggering or precipitating factor.