**Christopher BENNE, Respondent,**

v.

**ABB POWER T & D CO. and Gallagher Bassett Services, Appellants.**

No. WD 61642.

Missouri Court of Appeals, Western District.

June 17, 2003.

Thomas V. Clinkenbeard, Kansas City, MO, Arguing on behalf of Appellant.

Evan J. Beatty, Clayton, MO, Arguing on behalf of Respondent.

Before RONALD R. HOLLIGER, P.J., PAUL M. SPINDEN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

ABB Power Tool & Dye Company appeals the award of the Labor and Industrial Relations Commission in favor of Christopher Benne. ABB contends the Commission erred in refusing to allow ABB to make a record on the issue of whether John Madigan, a temporary commissioner, was entitled to participate in the case. We affirm the award of the Labor and Industrial Relations Commission.

## Statement of Facts

Christopher Benne sustained a work-related injury while employed by ABB Power Tool & Dye Company ("ABB"). Benne filed a claim with the Missouri Department of Labor and Industrial Relations, Division of Worker's Compensation, and was awarded $25,212.40 after a hearing before an administrative law judge. Benne applied to the Labor and Industrial Relations Commission ("LIRC") for review of the award pursuant to section 287.470 RSMo, claiming that the administrative award was erroneous because the determinations of the degree of disability were against the weight of the evidence. Benne's application for review was dated November 21, 2001. ABB filed a response to the application on November 30, 2001, arguing that the administrative award should be affirmed.

John P. Madigan, Jr. was appointed by Governor Robert Holden to the position of Acting Chair of the LIRC on February 11, 2002. ABB filed an objection to Mr. Madigan's participation in the case and moved that Madigan recuse himself on April 8, 2002. The same day, ABB also filed a motion requesting that the LIRC allow additional evidence to be entered into the record. The evidence was intended to preserve for appellate review the issue of whether John Madigan was properly appointed to the LIRC.

The LIRC issued its opinion on June 11, 2002. Finding that Benne's injuries warranted a higher determination of disability than had previously been awarded, the LIRC modified the administrative decision and increased Benne's award to $42,247.61. ABB's motions for Madigan to recuse himself and for the Submission of Additional Evidence were denied within the opinion. Madigan and another LIRC member, Matthew O'Neill, filed the majority opinion. The third LIRC member, Christian C.R. Wrigley, filed a dissent that supported the previous decision of the administrative law judge. ABB now appeals.

ABB brings just one point on appeal: that the LIRC erred when it denied ABB's motion to allow for additional evidence to be submitted for the record. The LIRC, ABB argues, is denying ABB the ability to develop a record that would provide the basis for challenge of the constitutionality of the participation of Madigan on the LIRC.

Under the Missouri Constitution, "[t]he governor shall fill all vacancies in public offices unless otherwise provided by law, and his appointees shall serve until their successors are duly elected or appointed and qualified." Mo. Const. art. IV, § 4.

The LIRC consists of three members, "to be appointed by the governor, by and with the advice and consent of the senate." § 286.010. Any vacancies on the LIRC are to be filled within sixty days. *Id.*

Appointments are subject to constitutional provisions:

[A]ll department and division heads appointed by the governor shall be made only by and with the advice and consent of the senate. The authority to act of any person whose appointment requires the advice or consent of the senate shall commence, if the senate is in session, upon receiving the advice and consent of the senate. If the senate is not in session, the authority to act shall commence immediately upon appointment by the governor, but shall terminate if the advice and consent of the senate is not given within thirty days after the senate has convened in regular or special session. If the senate fails to give its advice and consent to any appointee, that person shall not be reappointed by the governor to the same office or position.

Mo. Const. art. IV, § 51.

■ While an appointee seeks and awaits confirmation, it is sometimes necessary for the Governor to name a temporary appointee in order to allow state agencies to function. The Missouri Supreme Court has held that temporary appointments are acceptable, since "the uninterrupted functioning of the government has been recognized as a vital end." *Bank of Washington v. McAuliffe,* 676 S.W.2d 483, 486–87 (Mo. banc 1984). However, the Governor must not appoint a temporary appointee as an attempt to circumvent the senate's supervisory function over permanent appointments. *Id.* at 487. The question of how long a temporary appointee may hold office has not been addressed.

The Governor appointed Madigan to the LIRC as a temporary appointee on February 11, 2002. Madigan had also served previously as a temporary member of the LIRC. Madigan was continuing to serve on the LIRC on June 11, 2002, when the LIRC issued the decision in *Benne v. ABB,* Inj. No. 99–112253 (Mo. Labor and Indus. Relations Comm'n June 11, 2002).

## Motion to Introduce Additional Evidence in the Record

At the time Benne appealed his administrative award to the LIRC, November 2001, Madigan was not serving on the LIRC. On April 8, 2002, ABB filed an objection to Madigan's participation in the case. ABB also filed a motion for submission of additional evidence. ABB requested that additional evidence be allowed in order to preserve a constitutional challenge to the participation of Madigan in the review and resolution of the appeal. ABB requested permission to take depositions of the Secretary of the LIRC and the Secretary to the Missouri Senate in order to examine the witnesses concerning facts related to Madigan's status on the LIRC. It is agreed that the evidence could not have been discovered or presented to the administrative law judge because at the time of the hearing before the ALJ, Madigan was not serving on the LIRC.

The LIRC denied ABB's motion in its award:

The authority for the Governor to make temporary appointments was resolved in *Mitchell v. Missouri State Highway Patrol,* 809 S.W.2d 67 (Mo. App.1991), and was analyzed in an advisory opinion of the Missouri Attorney General, Att'y Gen. Op. 203 (1977). Based on the holding in *Mitchell* and the Attorney General's advisory opinion cited above, Mr. Madigan has authority to act for and on behalf of the Commission

as a member and as the Commission's Acting Chairman. Employer's Motion to Recuse Acting Chairman Madigan is, therefore, denied. The accompanying Motion to Submit Additional Evidence is likewise denied.

### Standard of Review

■ Review of LIRC awards is governed by section 287.495 RSMo. However, decisions of the LIRC that are interpretations or applications of law, rather than determinations of fact, are reviewed *de novo* without deference to the Commission's judgment. *Maxon v. Leggett & Platt,* 9 S.W.3d 725, 729 (Mo.App.2000); *Putnam–Heisler v. Columbia Foods,* 989 S.W.2d 257, 259 (Mo.App.1999).

### Analysis

■ The issue of Madigan's participation as a member of the LIRC has been raised a number of times. *See, e.g., McDermott v. Northwoods Police Dep't,* Injury No. 91–162679 (Mo. Labor and Indus. Relations Comm'n April 26, 2002); *Nielsen v. Max One Corp.,* Injury No. 99–076624 (Mo. Labor and Indus. Relations Comm'n April 22, 2002); *McKinney v. Port Indus., Inc.,* Injury No. 00–170909 (Mo. Labor and Indus. Relations Comm'n April 19, 2002). In each of the cases, a motion was made for Madigan to recuse himself. Each time, Madigan declined to recuse himself. In each case, the LIRC stated its belief that under *Mitchell v. Missouri State Highway Patrol,* 809 S.W.2d 67 (Mo.App.1991), Madigan was a properly appointed temporary commissioner.

Each time the issue has reached this level, we have turned aside the challenge on the basis that counsel has failed to make a record before the LIRC. *See, e.g., Miller v. Penmac Personnel Servs., Inc.,* 68 S.W.3d 574, 578 (Mo.App.2002);

*McDermott v. City of Northwoods Police Dep't,* 103 S.W.3d 134, 142 (Mo.App.E.D. 2002); *Nielsen v. Max One Corp.,* 98 S.W.3d 585, 591–92 (Mo.App.S.D. 2003). ABB argues that, accordingly, it must be allowed to develop additional evidence in order to preserve for appeal the issue of the constitutionality of a member of the commission. ABB argues that the denial of its request for the submission of additional evidence essentially forecloses judicial review of the issue.

ABB misunderstands the law. Even had a proper record been developed, this court is not in the position to rule via this case on the issue of whether Madigan was properly on the LIRC. Rather, the proper method for challenging the constitutional validity of an officer's service is through a *quo warranto* action. Section 531.010 RSMo.2000 provides:

> In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the attorney general of the state, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of a quo warranto, at the relation of any person desiring to prosecute the same.

Supreme Court Rule 98.02 provides:

> (a) Proceedings in quo warranto shall be by a civil action in which the party seeking relief is relator and the person against whom such relief is sought is respondent, which action shall be brought in the name of the State of Missouri;
>
> (b) Any of the following may be relators:
>
> (1) The attorney general of this state, upon personal information, . . . or at the relation . . . of any person

who has a special interest in the subject matter of the action ...

In *VanKirk v. Board of Police Commissioners of Kansas City*, 586 S.W.2d 350 (Mo. banc 1979), the police board, after a meeting and vote, issued an order removing the chief of police from office. The former chief promptly sought judicial review in the circuit court. One of the contentions was that the board's order was void because three of the board's five members no longer legally held office, but had forfeited the right to hold office by violating sections 84.400 and 84.410, RSMo 1978, by accepting or continuing in other positions of public trust while serving on the police board. *Id.* at 352. It was admitted that two of the board members formally resigned their other positions of public trust before accepting appointment to the board, but continued to serve in the office for a time. *Id.* at 354. It was also admitted that one other board member still held a position of public trust which she held at the time of her appointment. *Id.* All three participated in the vote to remove the chief. *Id.*

The court noted that, in spite of the foregoing, all have continued to serve as members of the police board, and no action has been taken by any party to remove them and declare their offices vacant. *Id.* The Supreme Court rejected the contention that the circuit court erred in refusing to reverse the order of removal. The court held that the three officers were "at least *de facto* if not *de jure*, members of the board." *Id.* The court said that "[a]s such, the act of each in voting to remove appellant is valid, as is the board's order of removal." *Id.*

█ In so ruling, the court invoked the "*de facto* doctrine." The *de facto* doctrine is a long standing rule to the effect that when an individual holds an office under a cloud as to current qualifications for the office, the acts of that officer are not invalid as to third persons and the public. *Boggess v. Pence*, 321 S.W.2d 667, 671–72 (Mo. banc 1959); In re F—— C——, 484 S.W.2d 21, 24–25 (Mo.App.1972). The doctrine is founded on the societal need for stability arising from confidence in the acts of government where there is an issue as to legal qualification of a person holding office. *Harbaugh v. Winsor*, 38 Mo. 327, 332 (1866).

█ An officer "*de facto*" holds office by some color of right or title, while a mere "usurper" or "intruder" intrudes on an office and assumes to exercise its functions without legal title or color of right thereto. *State ex rel. City of Republic v. Smith*, 345 Mo. 1158, 139 S.W.2d 929, 933 (1940).

In *Boggess*, citizens intervened in a city's *pro forma* action to authorize water bonds. 321 S.W.2d at 668. The citizens sought to raise the issue of the validity of bonds based on the contention that a council member had not been properly elected. *Id.* at 669. The Supreme Court affirmed the trial court's judgment against the citizens on the basis that the councilman was a *de facto* officer of the city, regardless of whether he was disqualified from holding office. *Id.* at 671. Thus, the validity of the bonds could not be challenged. *Id.* Also, in F—— C——, the court held that a petition filed by a *de facto* juvenile officer was not void, and accordingly the court had jurisdiction to proceed on that petition. 484 S.W.2d at 25 (the court ordered the juvenile petitioner discharged for other reasons).

*Bank of Washington v. McAuliffe*, 676 S.W.2d 483 (Mo. banc 1984), discussed earlier on the issue of the validity of temporary appointments, seems at first to be contrary to this principle. In that case, the State Banking Board had affirmed the

action of the Acting Director of Finance in granting a certificate of incorporation to the First Missouri Bank of Washington. *Id.* at 484. The Bank of Washington, which was affected by the issuance of a charter to a new competitor bank, had appealed the grant of the charter to the State Banking Board under section 361.094, RSMo 1978. After the Board affirmed the charter grant, the Bank of Washington sought judicial review. The circuit court affirmed the order. The court of appeals reversed the circuit court on other grounds, which were mooted by legislation after the Supreme Court granted transfer. With the first issue resolved, the court addressed only the issue of the Acting Director's authority to grant the charter.

The court noted that, after resignation of the Commissioner of Finance, the Governor appointed Earl Manning to serve as "Acting Director of Finance" until a permanent director could be appointed and qualified. *Id.* at 486. Mr. Manning was appointed September 5, 1979. Mr. Manning's name was never submitted to the Senate, although section 361.040, RSMo 1978, provided that a Director of Finance was to be appointed by and with the advice and consent of the senate. *Id.* A year later Mr. Manning approved the grant of the bank charter to the proposed incorporators. *Id.* at 485–86. The Supreme Court in *McAuliffe* proceeded directly to the issue of the authority of Manning, as Acting Director of Finance, to issue the charter, deciding that he had such authority at the time he issued the charter. *Id.* at 486–87. The court, although it could have, did not invoke the "*de facto* doctrine" to avoid deciding the authority of Manning to issue the charter. The concurring opinion of Judge Blackmar (joined by Judge Gunn) stated that he would have decided the case without addressing the actual validity of Manning's appointment, would have invoked the "*de facto*" doctrine, and

would have ruled that a challenge to the Acting Director's authority must come only by a proceeding in the nature of *quo warranto. Id.* at 489.

In considering *McAuliffe*, it is noteworthy that the majority did not proceed to the issue of Manning's authority and then decide against it. The majority instead reached the same result as it would have if it had invoked the *de facto* doctrine—that the grant of the charter was affirmed. The Court did not mention *Boggess*, or *Van Kirk*, or any other case involving the *de facto* doctrine, so it did not express any intention of overruling the *de facto* doctrine as substantive law. Thus, we suggest, the decision to invoke the *de facto* doctrine under such circumstances is discretionary, not mandatory. Clearly, if the court deemed there to be value in clarifying the law as to the status of the temporary appointee, rather than leaving a cloud over the head of such a person, the court could reasonably have made the decision it made in *McAuliffe*, even if ordinarily the *de facto* doctrine should be invoked. Accordingly, we do not see *McAuliffe* as abrogating the *de facto* doctrine, but rather as leaving the doctrine in place except for occasions when the court believes there is a specific reason for addressing the merits and deciding in favor of the validity of the officer's authority. In *McAuliffe*, the court obviously saw value in addressing and settling the issue of whether a temporary appointee is a legal and constitutional possibility, at least within limited parameters. *See McAuliffe*, 676 S.W.2d at 486–87. We do believe, however, that *McAuliffe* is an exception, and that generally the courts will not inquire into an officer's qualifications, except in a collateral proceeding by *quo warranto*.

Here, we see no specific reason to decide the legal status of the Madigan temporary appointment. Accordingly, we will invoke the "*de facto*" doctrine and decline to al-

low procedures designed to address the merits of the claim as to Madigan's status. ABB's motion to adduce additional evidence was directed at establishing that Madigan was unlawfully holding office. The method for establishing that a person has unlawfully held an office is through a *quo warranto* action. No such action was sought against Madigan.[1] ABB's desire to adduce additional evidence thus would have been to no avail, even had the motion been granted. Thus, this court cannot hold that the LIRC clearly erred when it denied ABB's motion to adduce additional evidence.

### Conclusion

For the foregoing reasons, we affirm the award of the Labor and Industrial Relations Commission.

SPINDEN and HOLLIGER, JJ., concur.

1. We suggest that this ruling does not necessarily leave a litigant powerless to obtain a recusal of an officer it believes is wrongfully holding office. The litigant may seek the instigation of a *quo warranto* action. Then, the litigant may ask the officer to recuse on the grounds of potential bias (because the litigant is seeking to instigate proceedings for ouster of the official through *quo warranto* in a collateral proceeding). Because an attack on the status or credentials of the officer may not be favored by the officer, recusal may be proper in such an instance, subject to the "rule of necessity." *See Central Mo. Plumbing Co. v. Plumbers Local Union 35,* 908 S.W.2d 366, 371 (Mo.App.1995).